UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

SILKE COOMBS,

    Plaintiff,

v.                                            Case No. 5:23-cv-70-JA-PRL

KATHRYN DEVRIES
MITCHELL, NICHOLAS
MAYABB, and K. RYAN MEEKS,

    Defendants.
_____

## ORDER

This case is before the Court on Defendants' *Daubert*[1] motion (Doc. 81) and Plaintiff's response (Doc. 91). Based on the Court's review of the parties' submissions, the motion must be granted in part and denied in part.

## I. BACKGROUND

This dispute stems from the sale of "KM Best Dressed" (KM), an American Quarter Horse that Plaintiff, Silke Coombs, purchased from Defendant Kathryn DeVries Mitchell, on April 18, 2022.[2] (Doc. 96-15). The parties' dealings began in December 2021 when Plaintiff's co-agent, Mike Edwards, inquired with Mitchell's agent, Nicholas Mayabb, about whether KM was for sale. (Doc. 81-2

---

[1] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

[2] KM is also known as "Amy" and is sometimes referred to as such in deposition testimony and other documents.

at 15:6–18; Doc. 81-5 at 40:5–14, 39:22–40:9). Negotiations between the parties dissipated in the ensuing months but resumed again in March 2022. (*See id.* at 40:8–13; Doc. 96-9).

Around the time the parties resumed negotiations, Mayabb hired Defendant K. Ryan Meeks, D.V.M., a veterinarian affiliated with Mitchell and Mayabb, to perform a flexion test on KM (Doc. 81-5 at 16:1–17:1). KM flexed positive during the test, indicating lameness in one or more legs. (Doc. 91-2 at 33:4–34:8). Based on these findings, Dr. Meeks administered steroid and hyaluronic injections in KM's coffin bone, stifle, and hock joints on March 28, 2022. (*Id.* at 36:8–38:21).

A few weeks later, the parties negotiated a price for the horse and arranged a pre-purchase examination. (Doc. 96-8 at 35:3–15, 42:6–22). At that time, Mayabb allegedly informed Plaintiff's co-agent, May Edwards, that KM had not received any veterinary treatment since December 2021 or earlier. (Doc. 96-6 at 77:10–80:7). Plaintiff, purportedly unaware of Dr. Meeks' relationships with Mayabb and Mitchell or his prior treatment of KM, hired Dr. Meeks to perform the pre-purchase examination. (*Id.* at 44:11–14, 47:1–19). Dr. Meeks did not disclose his prior work for Mayabb or treatment of KM to Plaintiff. (Doc. 96-25 at 104:22–105:6). KM did not exhibit any lameness during the pre-purchase exam, and the parties thereafter concluded the sale of KM for $325,000 and the right of Mitchell to retrieve one embryo from KM. (*Id.* at

2

42:20–22, 44:17–19; Doc. 36-1). The following month, Plaintiff arranged for KM to be transported from Florida to Arizona, where KM began competing in horse shows. (Doc. 96-8 at 66:21–25).

KM allegedly began exhibiting symptoms of lameness while competing at a horse show in Monroe, Washington, two months after the sale. (Doc. 89-3 at 56:7–16; Doc. 96-6 at 40:22–24). Plaintiff claims it was only then that she learned KM had flexed positive and received injections in March 2022. (Doc. 89-5 at 81:22–82:5). KM was ultimately diagnosed with a bone bruise and required several months of stall rest to recover. (Doc. 89-5 at 96:6–98:14).

Plaintiff claims that KM was sold in a defective condition that Defendants worked to conceal and that the sale would have been different had Plaintiff been aware of her true condition. (*See generally* Doc. 1). To support her theory, Plaintiff seeks to introduce the expert testimony of Amy Voliva, D.V.M. and Gary Clay. (Docs. 81-1, 81-7). Defendants now seek to exclude portions of the experts' testimony under *Daubert*.

## II.   LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert opinions and "compels" the Court "to perform [a] critical 'gatekeeping' function." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc) (quoting *Daubert*, 509 U.S. 579, 589 n.7, 597 (1993)); *see* Fed. R. Evid. 702 ("A witness who is qualified as an expert by knowledge, skill, experience, training, or

3

education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."). To decide the admissibility of an expert's opinions, the Court "engage[s] in a rigorous three-part inquiry" and considers (1) whether the expert is qualified to provide the opinions, (2) whether "the methodology by which the expert reache[d the opinions] is sufficiently reliable," and (3) whether in providing the opinions, the expert will help the factfinder "understand the evidence or . . . determine a fact in issue." *Frazier*, 387 F.3d at 1260 (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)). "The party offering the expert has the burden of establishing the expert's qualifications, the methodology's reliability, and the opinions' helpfulness to the factfinder "by a preponderance of the evidence." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1292 (11th Cir. 2005).

### III. DISCUSSION

The Court discusses the testimony of Dr. Voliva and Mr. Clay in turn.

#### A. Dr. Voliva

Plaintiff retained Dr. Voliva to opine on several issues in this case, including the fiduciary duties that Dr. Meeks owed to Plaintiff and the scope

and effect of the treatment Dr. Meeks administered to KM. Dr. Voliva wrote in her expert report (Doc. 81-1 at 12–13) that Dr. Meeks breached duties he owed to Plaintiff by failing to disclose his "preexisting financial and professional relationships with Mayabb and Mitchell" and his recent treatment of KM. Moreover, Dr. Voliva interpreted the veterinary records prepared by Dr. Meeks to indicate that KM was experiencing lameness on all four legs such that they were each injected. Dr. Voliva concluded that the improvement seen in KM at the pre-purchase exam and in the weeks thereafter was a result of the treatment administered by Dr. Meeks on March 28, 2022. (*Id.* at 14–15). Dr. Voliva opines that the lameness observed in KM beginning in June 2022 was a result of the effect of the injections subsiding, causing a preexisting injury to be exposed.

Defendants argue that much of Dr. Voliva's report is not based upon sufficient facts and data as required by *Daubert* and Federal Rule of Evidence 702 and should be excluded. As an initial matter, Defendants point to Dr. Voliva's lack of review of the deposition testimony of Mike Edwards, Mayabb, or Mitchell before preparing her report. There is no dispute that Dr. Voliva did not review this evidence. Nevertheless, Dr. Voliva's report identifies the records she did review, including Peterson & Smith Equine Hospital veterinary records, the pre-purchase exam report, and Dr. Meeks' deposition testimony. (Doc. 81-1 at 10). Having reviewed the evidence presented by the parties and Dr. Voliva's report, the Court is satisfied that Dr. Voliva reviewed and relied on sufficient

records and evidence in this case to render a reliable opinion. To the extent Defendants believe her testimony is unpersuasive due to her lack of review of these records, it is well established that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

Next, Defendants claim that Dr. Voliva's opinion that KM "exhibited signs of lameness on all 4 legs" is unsupported by any record evidence and should be excluded. In her report, Dr. Voliva exclusively relied on the veterinary records of Peterson & Smith Equine Hospital to support the proposition that KM presented as lame on all four legs. The relevant portion of the Peterson & Smith Equine Hospital records prepared by Dr. Meeks pertaining to the flexion test states:

> [M]ild 3/5 rh, reactive to stifle acupoints and mil[d] reactive to right hock acupoints, positive to stifle flexions, moves a little choppy up front in a circle at in hand trot, recommend coffin joint [a]nd hock and stifle joint injections.

(Doc. 89-4 at 4). Dr. Voliva interprets this record as meaning that KM presented as lame in all four legs. Defendants argue that Dr. Voliva misinterpreted the veterinary records in this case and her testimony should be excluded for that reason.

6

There is no dispute that Dr. Voliva is qualified to interpret veterinary records. Dr. Voliva purports to interpret the veterinary records prepared by Dr. Meeks based on her expertise and training as a horse veterinarian and her knowledge of industry custom. Any analytical weakness in Dr. Voliva's interpretation "is best left to cross-examination and competing expert testimony, rather than this Court's gate-keeping function." *Berger v. Philip Morris USA Inc.*, No. 3:09-cv-14157, 2014 WL 10715266, at *2 (M.D. Fla. Aug. 29, 2014); *see also Home Design Servs. Inc. v. Turner Heritage Homes Inc.*, No. 4:08-CV-355, 2010 WL 8685141, at *1 (N.D. Fla. July 19, 2010) ("Plaintiff's experts' conclusions are contrary to the Defendants' proposed application of the law to the facts of the case [but that] does not mean that the methods and reasoning employed by Plaintiff's experts are unreliable or unreasonable.").

Next, Dr. Voliva's report states that the improvement seen in KM's condition at the pre-purchase exam on April 14, 2022, was a direct consequence of the injections administered by Dr. Meeks on March 28, 2022. (Doc. 81-1 at 15). Dr. Voliva opines that the purpose of such injections is "to increase soundness and address signs of lameness" and that these joint injections "have their strongest effect in the 2 to 8 weeks following the injections." (*Id.*). Dr. Voliva explains that the injections administered to KM's coffin joints were designed to "provide support to the naturally produced synovial fluid and lubrication to the joint" and to provide pain relief. (Doc. 91-1 at 17). Defendants

challenge these findings, claiming that Dr. Voliva did not "explain in any manner how these injections masked any lameness." (Doc. 81 at 5).

The effect of the injections "presents a technical and scientific issue that requires the specialized knowledge of an expert medical witness." *Wingster v. Head*, 318 F. App'x 809, 815–16 (11th Cir. 2009); *Gamble v. Chatman*, No. 5:15-CV-113, 2016 WL 4424971, at *6 (M.D. Ga. June 30, 2016). The Court agrees with Plaintiff that Dr. Voliva's professional experience qualifies her to opine on the purpose and effect of administering joint injections and thus provides a sufficient basis for her opinions. *See Maiz v. Virani*, 253 F.3d 641, 668-69 (11th Cir. 2001) (rejecting the argument that an expert's testimony about "the passport-stamping practices of Mexican immigration authorities" was unreliable when the testimony was "based largely on [the expert's] personal experience"). Here, Dr. Voliva explained, based on her specialized knowledge as a veterinarian who regularly treats horses, that the injections of the type administered by Dr. Meeks are designed to improve the symptoms of lameness and that the effect is known to dissipate after a few weeks. To the extent Defendants disagree, they will be able to cross-examine her at trial.

Defendants also seek to exclude Dr. Voliva's opinion that the pre-purchase exam would have been stopped if KM exhibited signs of lameness. Defendants challenge this opinion as lacking in any factual information, data, or evidence such that it is inadequate to satisfy the *Daubert* reliability inquiry. In response,

Plaintiff asserts that witnesses can qualify as experts under the Federal Rules of Evidence on the basis of personal experience and that the expert's specialized knowledge may constitute the requisite facts and data on which they must ground their opinions.

Rule 702 specifically provides that expert status may be based on "knowledge, skill, experience, training, or education" in the subject for which his testimony is offered. *See Calta v. N. Am. Arms, Inc.*, No. 805-CV-1266-T, 2007 WL 4800641, at *3 (M.D. Fla. Nov. 27, 2007). This does not mean, however, that "experience, standing alone, would render reliable any conceivable opinion the expert may proffer." *Id.* Caselaw establishes that "one may be considered an expert but still risk exclusion of an opinion deemed unreliable." *Id.*

The Court finds that Dr. Voliva's opinion that the pre-purchase examination would have stopped had lameness been observed is inadequate under *Daubert*. Aside from bald references to "personal experience," which is not evident from the qualifications enumerated in the report, Dr. Voliva provides no basis for concluding that the pre-purchase examination would have been stopped in this case. Vague gestures to uncorroborated personal experience, without more, are insufficient, as there is "simply nothing left for the Court to assess with respect to the reliability" of this testimony. *Harrison v. Royal Caribbean Cruises, Ltd.*, No. 1:12-CV-24111, 2013 WL 11316997, at *2 (S.D. Fla. Nov. 8, 2013). This opinion "amount[s] to no more than *ipse dixit*,

9

which is neither reliable nor helpful." *Jarvis v. City of Daytona Beach*, No. 6:23-cv-508, 2024 WL 3325938, at *3 (M.D. Fla. July 8, 2024) (quotation omitted). It must therefore be excluded.

**B.     Mr. Clay**

Plaintiff retained Mr. Clay to provide opinions related to Defendants' ethical duties to Plaintiff and how the nondisclosure of KM's alleged injury affected the sale. First, Defendants seek to exclude Mr. Clay's opinion regarding Dr. Meeks' standard of care, arguing that Mr. Clay is not qualified to opine on the matter because he is not a veterinarian. Plaintiff responds that Mr. Clay is a "professional horseman" with over forty years of experience in the industry and is thus qualified to opine on the parties' reasonable expectations at pre-purchase examinations. (Doc. 91 at 8).

The Court agrees with Plaintiff that Mr. Clay's professional experience qualifies him to opine on the relevant standards of care, informs his knowledge of the applicable customs and practices, and provides a sufficient basis for his opinions. Mr. Clay has extensive experience with buying and selling horses and thus has first-hand knowledge of the expected disclosures during the pre-purchase examination. (Doc. 81-7 at 16). Mr. Clay is not a veterinarian, but this is not fatal to the admissibility of his testimony as he was not retained to opine on any question of veterinary medicine. Thus, Mr. Clay is qualified to offer this opinion despite not being a veterinarian.

Likewise, Mr. Clay is qualified to offer his opinion that Mitchell and Mayabb breached a duty in failing to accurately disclose KM's veterinary history or their relationship with Dr. Meeks at the time of the sale. Defendants argue that Mr. Clay erred in forming this opinion because he exclusively relied on the deposition of May Edwards to support the proposition that Defendants supplied incorrect information regarding KM's veterinary history. Given the outstanding questions of fact on this point, "[a]ny weaknesses in the factual underpinnings of [the expert's] opinions go to the weight and credibility of [the expert's] testimony, not to its admissibility." *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1285 (11th Cir. 2015). Indeed, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof," not exclusion, is the proper remedy for this purported defect in Mr. Clay's opinion. *See Daubert*, 509 U.S. at 596.

Next, Defendants seek to exclude Mr. Clay's opinions that the sale would have likely been cancelled if KM presented as lame at the pre-purchase examination and that KM was worth only $175,000 at the time of the sale because of her lameness. Defendants seek exclusion on the grounds that these opinions fail to satisfy the *Daubert* reliability inquiry.

First, Mr. Clay opines that it is common practice among show horse traders that the prospective sale of a show horse like KM would be cancelled upon a finding of lameness during the pre-purchase exam. Mr. Clay has

11

extensive experience in horse trading and is entitled to rely on his experience as to the effect that a finding of lameness during a pre-purchase examination would have on the prospective sale of the horse. It is clear how Mr. Clay's experience in horse trading could allow him to reach this conclusion. *See United States v. Esformes*, 60 F.4th 621, 637 (11th Cir. 2023) (*Daubert* allows expert testimony that is "primarily based on experience" where the expert explains "how that experience led to the conclusion he reached") (quoting *Frazier*, 387 F.3d at 1265). To the extent Defendants disagree with Mr. Clay's opinion, they can attempt to show its deficiency through vigorous cross-examination at trial.

As to Mr. Clay's appraisal of KM as worth $175,000, this opinion is not reliable and must be excluded. The Committee Note to the 2000 Amendments of Rule 702 expressly states:

> If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'

Indeed, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

12

Apart from asserting his experience, Mr. Clay provides no basis for determining that KM would have sold for $175,000 had Plaintiff known of the positive flexion test on March 28, 2022. Mr. Clay does not identify specific experiences or standards in the equine trading industry that he relied on in determining the horse would have sold for $175,000. In fact, Mr. Clay does not explain at all where this number comes from. Indeed, it is not clear that this opinion is the product of a reliable method, it does not appear to take the context of the parties' dealings into account, and it amounts only to *ipse dixit*, which is not sufficient under *Daubert*. Accordingly, this opinion must be excluded.

## IV. CONCLUSION

For the reasons explained above, it is **ORDERED** that Defendant's Daubert motion (Doc. 81) is **GRANTED** in part and **DENIED** in part. The Court excludes Dr. Voliva's opinion that the pre-purchase examination would have been stopped and Mr. Clay's opinion that KM was only worth $175,000. The motion to exclude is otherwise **denied**.

**DONE and ORDERED** in Orlando, Florida, on September 6, 2024.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record