UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

SILKE COOMBS,

    Plaintiff,

v.                                                     Case No. 5:23-cv-70-JA-PRL

KATHRYN DEVRIES
MITCHELL, NICHOLAS
MAYABB, and K. RYAN MEEKS,

    Defendants.

## ORDER

This case is before the Court on Defendants Kathryn DeVries Mitchell and Nicholas Mayabb's (Movants) motion for summary judgment (Doc. 82), Plaintiff's response (Doc. 90), and Movants' reply (Doc. 95). Based on the Court's review of the parties' submissions, the motion must be denied.

## I.   BACKGROUND

This dispute stems from the sale of "KM Best Dressed" (KM), an American Quarter Horse that Plaintiff, Silke Coombs, purchased from Defendant Kathryn DeVries Mitchell on April 18, 2022.[1] (Doc. 96-15). The parties' dealings began in December 2021 when Plaintiff's co-agent, Mike Edwards, inquired with

---

[1] KM is also known as "Amy" and is sometimes referred to as such in deposition testimony and other documents.

Mitchell's agent, Nicholas Mayabb, about whether KM was for sale. (Doc. 81-2 at 15:6–18; Doc. 81-5 at 40:5–14, 39:22–40:9). Negotiations between the parties dissipated in the ensuing months but resumed again in March 2022. (See *id.* at 40:8–13; Doc. 96-9).

Around the time the parties resumed negotiations, Mayabb hired Defendant K. Ryan Meeks, D.V.M., a veterinarian affiliated with Mitchell and Mayabb, to perform a flexion test on KM (Doc. 81-5 at 16:1–17:1). KM flexed positive during the test, indicating lameness in one or more legs. (Doc. 91-2 at 33:4–34:8). Based on these findings, Dr. Meeks administered steroid and hyaluronic injections in KM's coffin bone, stifle, and hock joints on March 28, 2022. (*Id.* at 36:8–38:21).

A few weeks later, the parties negotiated a price for the horse and arranged a pre-purchase examination. (Doc. 96-8 at 35:3–15, 42:6–22). At that time, Mayabb allegedly informed Plaintiff's co-agent, May Edwards, that KM had not received any veterinary treatment since December 2021 or earlier. (Doc. 96-6 at 77:10–80:7). Plaintiff, purportedly unaware of Dr. Meeks' relationships with Mayabb and Mitchell or his prior treatment of KM, hired Dr. Meeks to perform the pre-purchase examination. (*Id.* at 44:11–14, 47:1–19). Dr. Meeks did not disclose his prior work for Mayabb or treatment of KM to Plaintiff. (Doc. 96-25 at 104:22–105:6). KM did not exhibit any lameness during the pre-purchase exam, and the parties thereafter concluded the sale of KM for

2

$325,000 and the right of Mitchell to retrieve one embryo from KM. (*Id.* at 42:20–22, 44:17–19; Doc. 36-1). The following month, Plaintiff arranged for KM to be transported from Florida to Arizona, where KM began competing in horse shows. (Doc. 96-8 at 66:21–25).

KM allegedly began exhibiting symptoms of lameness while competing at a horse show in Monroe, Washington, two months after the sale. (Doc. 89-3 at 56:7–16; Doc. 96-6 at 40:22–24). Plaintiff claims it was only then that she learned KM had flexed positive and received injections in March 2022. (Doc. 89-5 at 81:22–82:5). KM was ultimately diagnosed with a bone bruise and required several months of stall rest to recover. (Doc. 89-5 at 96:6–98:14).

Plaintiff claims that KM was sold in a defective condition that Movants worked to conceal and that the sale would have been different or would not have occurred at all had Plaintiff been aware of her true condition. (*See generally* Doc. 1). Plaintiff brings claims against both Mitchell and Mayabb for violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) (Count I), fraudulent inducement (Count III), intentional misrepresentation (Count IV), and breach of implied warranty (Count V), as well as a claim for rescission (Count VI) solely against Mitchell.[2]

---

[2] Count II was asserted against Dr. Meeks only and is not the subject of the present motion.

Movants Mitchell and Mayabb now move for summary judgment on each of Plaintiff's claims against them.

## II. LEGAL STANDARD

On a motion for partial summary judgment, a district court views "all facts and reasonable inferences in the light most favorable to the nonmoving party." *Wesson v. Huntsman Corp.*, 206 F.3d 1150, 1152 (11th Cir. 2000). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* The movant "bears the initial responsibility of informing the district court of the basis for its motion" and "identifying those portions" of the record that 'it believes demonstrate the absence of a genuine issue of material fact.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant demonstrates the absence of a genuine issue of material fact, "[t]he burden then shifts to the non[]moving party" to "present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). To satisfy its burden, the nonmoving party "must do more than simply show that there is

some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## III. DISCUSSION

### A. FDUTPA

Plaintiff's FDUTPA claim is based on Rule 5H-26.004 of the Florida Administrative Code, which requires certain statements and disclosures to be made in the bill of sale for a horse.[3] Plaintiff claims the bill of sale (Doc. 96-15) did not satisfy subsections (1), (2), (7), and (8) of section 5H-26.004 and that these failures constitute a deceptive or unfair trade practice under FDUTPA. No party disputes that the bill of sale is plainly inadequate under Florida law. (*See* Doc. 1 ¶ 49, Doc. 82 at 6). Nevertheless, Mitchell and Mayabb move for summary judgment, arguing that Plaintiff's co-agent prepared the bill of sale and thus any defects therein are Plaintiff's own fault. Mitchell and Mayabb also argue that Plaintiff was not damaged by any defects in the bill of sale.

The elements of a consumer claim for damages under FDUTPA are: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 983 (11th Cir. 2016) (citing *City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. 4th DCA 2008)). A violation of

---

[3] Plaintiff also alleges in her FDUTPA claim that Mayabb supplied May Edwards with inaccurate veterinary information in violation of section 5H-26.003(12). (Doc. 1 ¶¶ 44–47). Mitchell and Mayabb move for summary judgment on this issue as well, and this claim will be addressed in Part B *infra*.

5

section 5H-26.004 provides a cause of action under FDUTPA pursuant to section 5H-26.003(13). Indeed, the purpose of Chapter 5H-26 "is to address unfair and deceptive trade practices surrounding the sale and purchase of horses in Florida" by establishing "minimum requirements relating to the sale and purchase of horses in Florida." Fla. Admin. Code Ann. R. 5H-26.001. Therefore, "a violation of any provision of Chapter 5H-26 is an express per se violation of FDUTPA." *Plain Bay Sales, LLC v. Gallaher*, No. 9:18-CV-80581, 2022 WL 409577, at *20 (S.D. Fla. Feb. 10, 2022).

Courts that have considered Rule 5H-26.004 have concluded that "the purpose of the administrative code provision is to require the seller to provide certain information to a buyer." *Smith v. Jackson*, No. 16-81454-CIV, 2017 WL 1047033, at *6 (S.D. Fla. Mar. 20, 2017). Movants do not find any support in the law for the proposition that they are exonerated from compliance with Rule 5H-26.004 merely because Plaintiff's agent first circulated the faulty bill of sale. Indeed, the seller's responsibility to comply with Rule 5H-26.004 is evident upon consideration of some of the required disclosures—including the horse's age and parentage—that are likely better known to the seller than the buyer. Thus, summary judgment will be denied. The jury must determine all relevant facts, "including whether or not [Plaintiff was] actually damaged as a result of the lack of the required statement[s] in the Bill of Sale." *Plain Bay Sales, LLC*, 2022 WL 409577, at *21.

6

## B. Fraudulent Inducement

Plaintiff's claim for fraudulent inducement centers around her allegation that Mayabb provided false information regarding KM's veterinary history on two separate occasions and that Mitchell and Mayabb failed to disclose their preexisting relationship with Dr. Meeks at the time of the pre-purchase exam. Mitchell and Mayabb move for summary judgment, claiming that there is no evidence Mayabb made any false statements and even if he did, the statements were made without Mayabb's knowledge of their falsity. Moreover, Movants claim that the March 28, 2022 joint injections were not material to Plaintiff's decision to purchase the horse and that any representations regarding KM's veterinary history were not designed to induce a sale.

The Florida Supreme Court has established four elements for fraudulent inducement: "(1) a false statement concerning a material fact; (2) the representator's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (emphasis removed).[4] "Justifiable reliance is not a necessary element of fraudulent misrepresentation." *Id.* In fact, in an action involving

---

[4] Causes of action for fraud, fraudulent misrepresentation, fraudulent inducement, and fraudulent concealment have identical elements. *See, e.g., Grills v. Philip Morris USA, Inc.*, 645 F. Supp. 2d 1107, 1122 (M.D. Fla. 2009).

7

fraudulent misrepresentation, "a recipient may rely on the truth of a representation, even though its falsity could have been ascertained had he made an investigation, unless he knows the representation to be false or its falsity is obvious to him." *Id.* The policy behind this principle "is to prohibit one who purposely uses false information to induce another into a transaction from profiting from such wrongdoing." *Id.* (quoting *Gilchrist Timber Co. v. ITT Rayonier, Inc.*, 696 So. 2d 334, 336–37 (Fla.1997)); *see also Tucker v. Evenflo Co.*, No. 6:20-cv-2, 2021 WL 8946699, at *2 (M.D. Fla. Nov. 8, 2021).

The requirement of a false statement "includes material misrepresentations *or omissions of fact.*" *Bradley Factor, Inc. v. United States*, 86 F. Supp. 2d 1140, 1146 (M.D. Fla. 2000) (emphasis in original). "[A] fact is material when if the representation had not been made, the contract or transaction would not have been entered into. Conversely, a representation is not material when it appears that the contract or transaction would have been entered into notwithstanding it." *Caldwell v. Compass Ent. Grp. LLC*, No. 6:14-CV-1701-Orl, 2015 WL 8772909, at *6 (M.D. Fla. Dec. 15, 2015) (quoting *Morris v. Ingraffia*, 18 So. 2d 1, 3 (Fla. 1944)).

During her deposition, May Edwards testified that Mayabb represented that KM last received veterinary treatment in December 2021. (Doc. 89-5 at 77:20–80:19). Mitchell and Mayabb argue that "[o]ther than May Edwards's statement," there is no evidence Mayabb made any false statement regarding

8

KM's veterinary history. But Edwards's statement, taken as true, is some evidence that Mayabb made a false statement since it is undisputed KM last received treatment on March 28, 2022, and not in December 2021 as Mayabb purportedly stated. (*See* Doc. 83 ¶ 2). It is well-established that "[a] court may not grant summary judgment if doing so would be based on witness credibility determination; the Court must accept the non-movant's competent testimony as true for the purposes of ruling on summary judgment." *Monserrat v. Sunapee Dialysis, LLC*, No. 6:21-cv-1007, 2022 WL 18926793, at *2 (M.D. Fla. Dec. 16, 2022) (citing *Johnson v. Lang*, No. 19-14278, 2022 WL 2734421, at *4 (11th Cir. July 14, 2022)). Mitchell and Mayabb's argument is further belied by the text messages between May Edwards and Mayabb (Doc. 89-6) that potentially corroborate Edwards's statement.

Next, Mitchell and Mayabb claim that Plaintiff has adduced no evidence that Mayabb's alleged false statements were made with knowledge of their falsity. However, the Court finds that Mayabb's knowledge of the falsity of his alleged statements is an outstanding material issue of fact that precludes the entry of summary judgment. *See CFJ Mfg., L.P. v. Sweetworks, Inc.*, No. 3:04-CV-0070-J, 2005 WL 1027283, at *8 (M.D. Fla. Apr. 14, 2005); *D & M Jupiter, Inc. v. Friedopfer*, 853 So. 2d 485, 487 (Fla. 4th DCA 2003) ("As a general rule, it is a matter for the jury to determine if an intentional misrepresentation has been made . . . ."). At summary judgment, the Court will not "weigh conflicting

evidence or make credibility determinations." *Wate v. Kubler*, 839 F.3d 1012, 1018 (11th Cir. 2016). Therefore, summary judgment must be denied on this issue.

Mitchell and Mayabb also argue that Mayabb's purported statements were not material because the injections the horse received on March 28, 2022, were "routine," noting that Plaintiff's own trainers currently administer the same injections to the horse. (Doc. 82 at 8–9). Based on this predicate, Mitchell and Mayabb conclude that it is "not possible for Plaintiff to argue that these injections masked an injury" because "Plaintiff has the horse administered in a similar fashion." (*Id.* at 9).

Whether a misrepresentation is material "is a jury question, unless the evidence excludes every reasonable inference except that there was or was not a material misrepresentation." *Perry v. State Farm Fire & Cas. Co.*, 734 F.2d 1441, 1444 (11th Cir. 1984); *see also Goodman v. Safeco Ins. Co. of Illinois*, No. 8:13-CV-2641-T, 2014 WL 5080247, at *3 (M.D. Fla. Sept. 30, 2014). In this case, the record evidence does not justify deciding the materiality of the alleged misrepresentations at summary judgment. Moreover, Mitchell and Mayabb do not explain how the conclusion that the injections administered on March 28, 2022, could not have masked the horse's injury logically follows from the fact Plaintiff also has the horse administered with similar injections. In any event, "[o]ne cannot prevail on summary judgment simply by branding the other side

10

untruthful." *Hosea v. Langley*, No. CIV.A. 04-0605, 2006 WL 314454, at *29 n. 81 (S.D. Ala. Feb. 8, 2006). Thus, summary judgment on this issue must be denied.

Finally, Mitchell and Mayabb argue that the alleged false statements about the horse's veterinary history were not designed to induce a sale. Movants claim that KM was injected on March 28, 2022, in preparation for an upcoming horse show and that the injections were not related to the upcoming pre-purchase exam with Plaintiff. (Doc. 82 at 9). However, summary judgment in a fraud case such as this "is rarely proper as the issue so frequently turns on the axis of the circumstances surrounding the complete transaction, including circumstantial evidence of intent and knowledge." *Metro. Life Ins. Co. v. Liebowitz*, No. 2:20-cv-276, 2022 WL 103566, at *7 (M.D. Fla. Jan. 11, 2022) (quoting *Glob. Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1029 (11th Cir. 2017)). The Court finds no reason to depart from the general rule in this case. Mayabb's intentions in making the alleged false statements and whether those false statements actually induced Plaintiff into completing the sale are disputed issues of fact. Therefore, summary judgment is inappropriate.

### C. Breach of Implied Warranty

"A cause of action for breach of implied warranty of merchantability requires allegations that (1) the plaintiff was a foreseeable user of the product, (2) the product was used in the intended manner at the time of the injury, (3)

11

the product was defective when transferred from the warrantor, and (4) the defect caused the injury." *Trophia v. Camping World, Inc.*, 616 F. Supp. 3d 1305, 1313, 1340 (M.D. Fla. 2022) (quoting *Jovine v. Abbott Lab'ys, Inc.*, 795 F. Supp. 2d 1331 (S.D. Fla. 2011)). Plaintiff claims that KM is "not as warranted or guaranteed," as she was not "suitable to show in [American Quarter Horse Association] shows due to her lameness." (Doc. 1 ¶ 88). Mitchell and Mayabb move for summary judgment, claiming that KM was not defective when sold and therefore Plaintiff's claims fail as a matter of law. Mitchell and Mayabb note that there is no dispute that the "horse was fine at the time of the purchase" and that Plaintiff showed the horse multiple times before it exhibited signs of lameness. (Doc. 82 at 10).

Notwithstanding Mitchell and Mayabb's assertions to the contrary, KM's condition at the time of the sale remains a genuine dispute of material fact. Plaintiff alleges that KM's underlying injury was observed and treated by Dr. Meeks via injections on March 28, 2022, and that the injections masked an underlying injury such that her latent lameness was not observed during the pre-purchase examination. Plaintiff has retained an expert witness, Dr. Amy Voliva, who has submitted an expert report (Doc. 81-1) that supports this theory of the case. In contrast, Mitchell and Mayabb claim that the lameness observed in KM on March 28, 2022, was comparatively mild, confined to only one leg, and fully healed at the time of the pre-purchase exam. Mitchell and Mayabb believe

12

that KM's injury developed after the pre-purchase exam because Plaintiff transported KM across long distances and showed the horse at multiple competitions. Movants have likewise retained an expert witness, Dr. Robert P. Boswell, D.V.M., who has submitted an expert report in accordance with this theory of the case. (Doc. 96-26). These are "material facts in dispute that preclude summary judgment on the breach of implied warranty of merchantability claim." *Dent v. Composite Structures, Inc.*, No. 8:07-cv-274-T, 2009 WL 3837866, at *3 (M.D. Fla. Nov. 17, 2009). Therefore, summary judgment as to the breach of implied warranty claim must be denied.

### D. Rescission

Plaintiff's claim for rescission is solely against Mitchell. To succeed on a claim for rescission a plaintiff must prove the following six elements by a preponderance of the evidence:

> (1) [t]he character or relationship of the parties; (2) [t]he making of the contract; (3) [t]he existence of fraud, mutual mistake, false representations, impossibility of performance, or other ground for rescission or cancellation; (4) [t]hat the party seeking rescission has rescinded the contract and notified the other party to the contract of such rescission; (5) [i]f the moving party has received benefits from the contract, he should further allege an offer to restore these benefits to the party furnishing them, if restoration is possible; [and] (6) [l]astly, that the moving party has no adequate remedy at law.

<218>
<219>
<220>
<221>
<222>
<223>

*Metro. Life Ins. Co. v. Liebowitz*, 592 F. Supp. 3d 1072, 1083 (M.D. Fla. 2022) (alterations in original) (quoting *Billian v. Mobil Corp.*, 710 So. 2d 984, 991 (Fla. 4th DCA 1998)). Rescission is an equitable remedy which "lies within the sound discretion of the court and is not available as a matter of right." *Allegheny Cas. Co. v. Archer-W./Demaria Joint Venture III*, No. 8:13-CV-128, 2014 WL 4162787, at *20 (M.D. Fla. Aug. 21, 2014) (quoting *Gov't of Aruba v. Sanchez*, 216 F. Supp. 2d 1320, 1365 (S.D. Fla. 2002)). Indeed, "[r]escission and cancellation are harsh remedies and therefore not favored by the courts." *Rood Co. v. Bd. of Pub. Instruction of Dade Cnty.*, 102 So. 2d 139, 142 (Fla. 1958).

Mitchell argues that rescission is unavailable as a matter of law because (1) she believes summary judgment is warranted on Plaintiff's fraud claims, the maintenance of which are a prerequisite to the rescission claim; and (2) rescission may only be granted when the parties can be restored to the *status quo ante*. Having dispensed with Movants' arguments against Plaintiff's fraud claims, the Court turns now to Mitchell's remaining arguments against rescission.

Mitchell posits that the *status quo ante* cannot be restored because KM has had "two years of additional use and wear and tear," in addition to what Mitchell characterizes as a post-sale injury that at one point caused the horse substantial lameness. (Doc. 82 at 13). Plaintiff responds that "the count for rescission is pleaded in the alternative to any claim for legal relief." (Doc. 90 at

14

25 (quoting *Zeta Mgmt. Corp. v. Parkside Heights Phase One, LLC*, No. 08-61146-CIV, 2009 WL 10667566, at *3 (S.D. Fla. Jan. 13, 2009))).

Under Florida law, "a contract will not be rescinded even for fraud when it is not possible for the opposing party to be put back into his pre-agreement status quo condition." *Royal v. Parado*, 462 So. 2d 849, 856 (Fla. 1st DCA 1985); *see also Lang v. Horne*, 156 Fla. 605, 615 (1945). However, even "where restoration to the status quo is impossible, a court may still grant rescission provided the equities between the parties can be balanced." *Allegheny Cas. Co. v. Archer-W./DemariaJoint Venture III*, No. 8:13-CV-128, 2014 WL 12576634, at *2 (M.D. Fla. July 7, 2014) (quoting *Turner v. Fitzsimmons*, 673 So. 2d 532, 535 (Fla. 1st DCA 1996)). To the extent a factfinder ultimately determines that an adequate remedy at law exists where a claim for rescission has also been pled, "an election between inconsistent remedies is made after a verdict is entered but prior to the entry of judgment." *Wynfield Inns v. Edward LeRoux Grp., Inc.*, 896 F.2d 483, 488 (11th Cir. 1990); *see also McDonald v. Connell*, 158 So. 2d 780, 784–85 (Fla. 2d DCA 1963) (stating that rescission is appropriate only where the plaintiff has suffered injuries that cannot be compensated in damages). *But see Sokolow v. Damico*, No. 19-CV-80278, 2019 WL 7188563, at *5 (S.D. Fla. Dec. 26, 2019) (finding that rescission was unavailable as a matter of law where a show horse "had been subjected to surgery and now had a foreign object . . . in her right front ankle").

In this case, it is not clear whether KM could be returned in the same condition that predated the sale. On the one hand, the horse is now two years older and, according to Movants, developed an injury after the sale that required substantial treatment. On the other hand, Movants acknowledge that the "horse ha[s] fully recovered from the bone bruise and ha[s] resumed competing in [American Quarter Horse Association] shows." (Doc. 82 at 11). Viewed in the light most favorable to Plaintiff, the facts show that the *status quo ante* could potentially be restored. Summary judgment on the claim for rescission must be denied.

## IV. CONCLUSION

For the reasons explained above, it is **ORDERED** that Movants' Motion for Summary Judgment (Doc. 82) is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida, on September 6, 2024.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record

16